IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA

v.                                           Criminal Case No.  3:09cr235-1

JOHN W. WILKERSON, JR.,

Defendant.

## MEMORANDUM OPINION

This matter comes before the Court on Defendant John W. Wilkerson, Jr.'s Motion to

Reduce Sentence Pursuant to Section 603(b) of the First Step Act (the "Motion for

Compassionate Release").  (ECF No. 116.)  The United States responded in opposition (the

"Response"), (ECF No. 120), and Mr. Wilkerson replied (the "Reply"), (ECF No. 124).

This matter is ripe for disposition.  The Court dispenses with oral argument because the

materials before it adequately present the facts and legal contentions, and argument would not

aid the decisional process.  For the reasons that follow, the Court will deny Mr. Wilkerson's

Motion.  (ECF No. 116.)

## I.  Background

### A.    Mr. Wilkerson's Underlying Offense

On September 22, 2009, Mr. Wilkerson was charged in a seventeen-count Superseding

Indictment.[1]  In October 2023, Mr. Wilkerson entered into a written plea agreement with the

---

[1] One count of conspiracy to distribute and to possess with intent to distribute one
kilogram or more of heroin, in violation of 21 U.S.C. § 846 (Count One); five counts of
distribution of a detectable amount of heroin, in violation of 21 U.S.C. § 841(a)(1) (Counts Two,
Three, Four, Five, and Six); one count of possession with intent to distribute more than one
hundred grams of heroin, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(i) (Count Seven);
four counts of possession of a firearm in furtherance of a drug trafficking crime and one count of
possession of a firearm with the serial number removed in furtherance of a drug trafficking

United States in which he pleaded guilty to conspiracy to distribute and to possess with intent to distribute one kilogram or more of heroin (Count One) and one count of possession of a firearm in furtherance of a drug trafficking crime (Count Nine). (ECF No. 43 ¶ 1.)

The Plea Agreement and the Statement of Facts describe the conduct underlying Mr. Wilkerson's offenses. (ECF Nos. 43, 44.) Mr. Wilkerson distributed more than ten but less than thirty kilograms of heroin. (ECF No. 44 ¶ 7.) From around 2007 until June 2009, Mr. Wilkerson obtained more than one kilogram of heroin hydrochloride from a New York supplier. (ECF No. 44 ¶ 1.) Roughly twice per month during this period, multiple couriers ferried heroin from New York to Richmond for delivery to Mr. Wilkerson. (ECF No. 44 ¶ 1.)

Between August 2008 and June 2009, Mr. Wilkerson resided with his fiancée and co-conspirator, Tamara C. Frazier, in a house that Ms. Frazier leased. (ECF No. 44 ¶ 2.) Mr. Wilkerson used this residence to store, process, and package heroin and proceeds from its sale, and he "maintain[ed] loaded firearms and drug paraphernalia" in the home. (ECF No. 44 ¶ 2.)

On four separate occasions between December 2008 and April 2009, Mr. Wilkerson sold a total of approximately 4.5 ounces of heroin to a confidential informant. (ECF No. 44 ¶ 3.) On April 22, 2009, Mr. Wilkerson "delivered to [two heroin couriers] a large amount of United States currency," including $1,500 that the confidential informant paid to Mr. Wilkerson earlier that day during a controlled buy. (ECF No. 44 ¶ 4.)

---

crime, in violation of 18 U.S.C. § 924(c)(1)(A) (Counts Eight, Nine, Sixteen, and Seventeen); one count of possession of a firearm after having previously been convicted of a crime punishable by imprisonment for a term exceeding one year, in violation of 18 U.S.C. § 922(g)(1) (Count Ten); one count of conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h) (Count Eleven); and four counts of money laundering, in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i) and 2 (Counts Twelve, Thirteen, Fourteen, and Fifteen). (ECF No. 35, at 2–11.)

On June 14, 2009, Mr. Wilkerson removed $53,000 from Ms. Frazier's car and used it to obtain approximately 504 grams of heroin.  (ECF No. 44 ¶ 5.)  Subsequently, while Mr. Wilkerson was driving Ms. Frazier's vehicle, authorities stopped him and discovered the heroin in the car's center console and a loaded .40 caliber handgun on the driver's side floorboard.  (ECF No. 44 ¶ 5.)  A search of the vehicle's backseat yielded a small press mold form, a set of scales, and two more loaded pistols, one of which bore an obliterated serial number.  (ECF No. 44 ¶ 6.)  Authorities discovered in Mr. Wilkerson's residence, "among other things, approximately one half ounce of heroin, a revolver, a loaded semi-automatic assault rifle, drug paraphernalia, scales, [and] jewelry . . . ."  (ECF No. 44 ¶ 6.)  All told, Mr. Wilkerson's conduct involved the exchange of more than $100,000 dollars during the relevant time period.  (ECF No. 44 ¶¶ 3–5.)

Prior to sentencing, the probation officer prepared the Presentence Report ("PSR") for Mr. Wilkerson, summarizing his offense level and criminal history.  (ECF No. 88 ¶¶ 45–120.)  Mr. Wilkerson received a three-point reduction to his offense level for his acceptance of responsibility under U.S.S.G. § 3E1.1(a)–(b), (ECF No. 88 ¶ 87), resulting in a Total Offense Level of 33, (ECF No. 88 ¶ 154).

**B.**    **Changes to Mr. Wilkerson's Criminal History Computation**

**1.**    **Mr. Wilkerson's Original Criminal History Computation**

At the time of Mr. Wilkerson's original sentencing, his criminal history score subtotaled 11 points.  (ECF No. 88, at 40.)  Mr. Wilkerson received a two-point enhancement to his criminal history score pursuant to U.S.S.G. § 4A1.1(d) (2009) because he committed the underlying offenses while under criminal justice sentences for Possession of Cocaine with Intent to Distribute; Reckless Driving, Driving on Suspended License (7th offense); and Operating a

3

Motor Vehicle While Operator's License is Revoked / Suspended (7th offense). (ECF No. 88, at 40–41.) He also correctly received a one-point enhancement to his criminal history score pursuant to U.S.S.G. §§ 4A1.1(e) and 4A1.2 (2009) because he committed the underlying offenses less than two years after his March 29, 2007 release from prison on a sentence for Possession of Cocaine with Intent to Distribute. (ECF No. 88, at 41.) These enhancements produced a criminal history score of 14, designating a Criminal History Category of VI.

According to the law at the time of his original sentencing, Mr. Wilkerson's Criminal History Category of VI and Total Offense Level of 33 yielded a Sentencing Guidelines range of 235–293 months' incarceration on Count One[2]. (ECF No. 88 ¶ 156.) Count Nine carried a mandatory minimum of 60 months' imprisonment to be served consecutively to any other term imposed. (ECF No. 88 ¶ 156.) Therefore, Mr. Wilkerson's minimum sentence under the Guidelines was 295 months' imprisonment, or just over 24.5 years. (ECF No. 88 ¶ 156.)

On January 22, 2010, the Court granted Mr. Wilkerson's Motion for Downward Departure based on an overstated criminal history category, (ECF No. 61), imposing a sentence of 210 months' imprisonment on Count One and the mandatory minimum 60 months' imprisonment on Count Nine to be served consecutively. (ECF No. 79, at 2–3.) This amounted to 22 years and 6 months' imprisonment. The Court imposed a term of five years of supervised release on Count One and a concurrent five years' supervised release on Count Nine to be completed upon Mr. Wilkerson's release from incarceration. (ECF No. 79, at 2–3.)

---

[2] Count One also carries a mandatory minimum sentence of 120 months' imprisonment. (ECF No. 88 ¶ 156.)

### 2.   Mr. Wilkerson's Criminal History Computation at the Time of His 2015 Sentence Reduction

In September 2015, based on amendments to the drug quantity table in U.S.S.G. § 2D1.11 (2014), Mr. Wilkerson filed a Motion to Reduce Sentence Pursuant to Title 18 U.S.C. § 3582(c). (ECF No. 95.)  The Court granted Mr. Wilkerson's 2015 motion, reducing his sentence to 248 months' imprisonment, comprising 188 months' imprisonment on Count One—reduced from the original 210 months—and the unchanged mandatory minimum 60 months' imprisonment on Count Nine. (ECF No. 100.)  This amounted to a total of approximately 20 years and 8 months' imprisonment.  At that time, Mr. Wilkerson's Total Offense Level decreased from 33 to 31. (ECF No. 121, at 1.)  Additionally, but inconsequential to Mr. Wilkerson's sentence reduction because it would not change his criminal history category, "[b]ased on changes to the Guidelines, the 1 point that was added because the defendant committed the instant offense less than 2 years after release from imprisonment [was] no longer available." (ECF No. 121, at 1 n.1.)  Accordingly, Mr. Wilkerson's criminal history points decreased from 14 to 13, but his Criminal History Category remained VI. (ECF No. 121, at 1 n.1.)

### 3.   Mr. Wilkerson's Current Criminal History Computation

In the instant Motion, Mr. Wilkerson argues that recent Sentencing Guideline amendments would reduce his sentencing guideline range. (ECF No. 116, at 5–6.)  In June 2023, the United States Probation Office submitted a Memorandum that includes a discussion of this claim. (ECF No. 121.)[3]  The Memorandum states that "[t]here have been no changes to the

---

[3] Based on an apparent misinterpretation of that Memorandum, Mr. Wilkerson's Reply backed off of his changed-guidelines contention. (*See* ECF No. 124, at 1.)  As noted later, the Court will give Mr. Wilkerson an additional point off pursuant to Amendment 821 of the 2023 Sentencing Guidelines. *See* U.S.S.G. § 4A1.1(e) (2023).

guidelines, and if sentenced *today*, [June 6, 2023,] the guidelines would remain the same." (ECF No. 121, at 2 (emphasis added) (footnote omitted).) However, the Memorandum also explains that once the *November* 2023 amendments took effect, "rather than being assessed two points, defendants who were assessed 7 or more criminal history points [would] only be assessed 1 status point." (ECF No. 121, at 2 n.2.) Therefore, as of November 2023, Mr. Wilkerson would receive one fewer criminal history point, reducing his total points from 13 to 12 and his Criminal History Category from VI to V.[4] *See* U.S.S.G. § 4A1.1(e).

With a Total Offense Level of 31, (ECF No. 121, at 1), and a Criminal History Category of V, Mr. Wilkerson's recommended sentencing range for Count One would be 168 to 210 months' imprisonment. The mandatory consecutive 60-month sentence for Count Two remains.

As of July 2, 2024, Mr. Wilkerson has served one hundred eighty months and twenty days of his 248-month term of imprisonment, or approximately seventy-three percent of his sentence. (*See* ECF No. 88, at 1.) Mr. Wilkerson is currently housed at FMC Lexington in Lexington, Kentucky. *Fed. Inmate Locator*, BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (last visited July 2, 2024). The Bureau of Prisons ("BOP") lists Mr. Wilkerson's release date as March 5, 2027. *Id.*

---

[4] Mr. Wilkerson also argues that his June 2000 conviction for marijuana possession, which currently adds one criminal history point, (ECF No. 88, at 39), would no longer factor into his criminal history score calculation. (ECF No. 116, at 6.) Even if such an omission further reduced Mr. Wilkerson's criminal history score from 12 points to 11, his Criminal History Category would remain V. Consequently, the Court declines to address this argument.

### D.    Mr. Wilkerson's Motion for Compassionate Release

On June 26, 2023, Mr. Wilkerson, acting through counsel, filed the instant Motion requesting that this Court order his immediate release from prison. (ECF No. 116.)  The Motion argues (1) Mr. Wilkerson suffers from a degenerative spinal condition that the BOP has not adequately treated and (2) Mr. Wilkerson has demonstrated rehabilitation and growth.[5]  (*See* ECF No. 116.)

### 1.    Mr. Wilkerson's Health Condition and Treatment

In the Motion, Mr. Wilkerson avers that he suffers from spinal stenosis, "a painful condition that occurs when the spaces in the spine narrow and put pressure on the spinal cord and nerves," which has the potential to permanently damage the spinal cord when left untreated. (ECF No. 116, at 6 (citing *Spinal Stenosis*, NATIONAL INSTITUTE OF ARTHRITIS AND MUSCULOSKELETAL AND SKIN DISEASES (Jan. 2020), https://www.niams.nih.gov/health-topics/spinal-stenosis#:~:text=Overview%20of%20Spinal%Stenosis,branch%20out%from %20the%20cord).)  Mr. Wilkerson claims that he suffers pain and numbness on his body's left side, that a corrective surgery was scheduled "several years ago" and then cancelled, and that he "has not received any treatment for this issue at FMC Lexington despite his ongoing complaints for the pain he is experiencing."  (ECF No. 116, at 7.)

According to Mr. Wilkerson, his health condition is extraordinary and compelling because his spine will deteriorate if it remains untreated, leaving him less able to care for himself. (ECF No. 116, at 7.)  Mr. Wilkerson also argues that "the lack of attention the BOP has

---

[5] In the Motion, Mr. Wilkerson further contends that his sentencing guidelines have changed, (ECF No. 116, at 5–6), but Mr. Wilkerson expressly abandons this claim in his Reply. *See supra*, at 5 n.2.  Consequently, the Court discusses the sentencing-disparity issue separate from the Motion's contentions. *See supra*, at Part I.B.1–3.

paid to this condition is extraordinary and compelling on its own." (ECF No. 116, at 7.) Mr.
Wilkerson refers the Court to the 2023 amendments to the Sentencing Guidelines, which
expanded the definition of "extraordinary and compelling" circumstances to include those
requiring "long-term or specialized medical care that is not being provided and without which
the defendant is at risk of serious deterioration."[6] (ECF No. 116, at 7 (quoting *Amendments to
the Sentencing Guidelines*, UNITED STATES SENTENCING COMMISSION (Apr. 27, 2023),
https://www.ussc.gov/sites/default/files/pdf/amendment-process/reader-friendly-
amendments/202305_RF.pdf, at 10–11).)

### 2.   Mr. Wilkerson's Rehabilitation

Mr. Wilkerson's Motion for Compassionate Release further contends that he has
demonstrated rehabilitation and growth during his incarceration and that the Court should
consider these factors in favor of his release.[7] (ECF No. 116, at 8.) Mr. Wilkerson was moved
to a low-security prison facility, finished a drug treatment program, completed over 22
educational courses, and is enrolled in a customer service apprenticeship program. (ECF No.
116, at 8; ECF No. 121, at 2.) In 2020, Mr. Wilkerson received a single disciplinary sanction for
Possessing a Hazardous Tool, which he claims was for possessing a cellular telephone.[8] (ECF
No. 121, at 2; ECF No. 116, at 9.)

---

[6] *See also* U.S.S.G. § 1B1.13(b)(1)(C).

[7] It is unclear whether Mr. Wilkerson intends that the Court consider these issues as
independent extraordinary and compelling reasons for his release or, instead, as part of the
Court's analysis of the sentencing factors under 18 U.S.C. § 3553(a). (EFC No. 116, at 8; *see
also* EFC No. 120, at 15 n.2.) The Court will evaluate this argument through both lenses.

[8] Neither the Response nor the Probation Office's Memorandum confirm or deny this
characterization of the hazardous tool Mr. Wilkerson was sanctioned for possessing. (*See* ECF
Nos. 120, 116.)

Upon his release, Mr. Wilkerson plans to live with Jerilyn Smith-Lundy, whom he refers to as his "aunt." (ECF No. 116, at 9; *see* ECF No. 124, at 3.) Ms. Smith-Lundy "has known and been affiliated with Mr. Wilkerson for 27+ years[,] embracing him as a bloodline [family] member." (ECF No. 124-1, at 1.) Ms. Smith-Lundy is a former Magistrate in Henrico County. (ECF No. 124-1, at 1.) At the time the Motion was filed, Ms. Smith-Lundy owned Jerilyn's Bailbonding, LLC and Hit the Ground Running, a non-profit that helps people with arrest records re-enter the community by working toward and obtaining (among other things) employment and housing. (ECF No. 124-1, at 1.) Mr. Wilkerson states that Ms. Smith-Lundy will provide him with employment opportunities and a support network. (ECF No. 116, at 9.) He also outlines his plan to volunteer for a local nonprofit organization focused on small businesses, where he hopes to apply knowledge that he gained in BOP educational courses. (ECF No. 116, at 9.)

Finally, Mr. Wilkerson contends that older individuals are less likely to reoffend or commit violent crimes and he highlights that if he were released today, "he would remain under supervision until 2028, when he would be in his 50s." (ECF No. 116, at 9.)

According to the United States, Mr. Wilkerson's rehabilitation efforts are not sufficiently extraordinary to justify a reduction of his sentence. (ECF No. 120, at 15.) The United States contends that rehabilitation and growth are expected of defendants, and that Mr. Wilkerson's "efforts at rehabilitation do not outweigh the seriousness of his crime, his criminal history, and the need to protect the public and further deter him from future crimes." (ECF No. 120, at 16.)

### 3.    Mr. Wilkerson's Exhaustion of Administrative Remedies

In its Response, the United States argues that Mr. Wilkerson failed to exhaust his administrative remedies before bringing the instant Motion. (ECF No. 120, at 8.) More than thirty days prior to filing his Motion, Mr. Wilkerson sent a message to the warden of his BOP

9

facility, requesting compassionate release. (ECF No. 116-1, at 1.) However, in that message, Mr. Wilkerson did not mention his purported spinal stenosis or his rehabilitation claims. (ECF No. 116-1, at 1.) The United States contends that because Mr. Wilkerson did not previously raise two of the three issues on which his Motion currently relies, he has not exhausted his administrative remedies and should be precluded from raising his medical and rehabilitation claims with the Court. (ECF No. 120, at 8.) The United States posits that the requirement to exhaust all administrative remedies may not be waived. (ECF No. 120, at 8–9.)

In his Reply, Mr. Wilkerson counters with the Fourth Circuit's 2022 decision in *United States v. Ferguson*, (55 F.4th 262, 268–69 (4th Cir. 2022)), holding that an inmate's initial release request need not raise every issue on which she or he may ultimately rely in a subsequent motion for compassionate release. (ECF No. 124, at 1–2.) The Reply also highlights that Mr. Wilkerson was uncounseled as to what he needed to include in his initial message to the BOP, outside of a general release request. (ECF No. 124, at 2.) Finally, Mr. Wilkerson argues that, if necessary, the Court can and should waive his administrative-exhaustion requirement because the requirement is non-jurisdictional, and the BOP would have been independently aware of Mr. Wilkerson's health condition and rehabilitation efforts when it received his initial request. (ECF No. 124, at 2 (citing *United States v. Muhammad*, 16 F.4th 126, 131 (4th Cir. 2021)).)

## II. Compassionate Release Under the First Step Act of 2018

### A. Legal Standard

Prior to the First Step Act of 2018, an individual could not petition the district court for relief on compassionate release grounds without approval from the BOP. *See Coleman v. United States*, 465 F. Supp. 3d 543, 546 (E.D. Va. 2020). In 2018, Congress enacted the First Step Act to provide incarcerated individuals the opportunity to directly petition the courts for

10

compassionate release under 18 U.S.C. § 3582(c)(1)(A).[9]  First Step Act of 2018, Pub. L. No.

115–391, 115th Cong. (2018).  Under the First Step Act, criminal defendants may petition courts

on their own initiative to modify their sentences.  *Coleman*, 465 F. Supp. 3d at 546.

Before granting a reduction, courts must consider the factors set forth in 18 U.S.C.

§ 3553(a), *see* 18 U.S.C. § 3582(c)(1)(A), and evidence of rehabilitation and other post-

conviction conduct.  *See United States v. Martin*, 916 F.3d 389, 397–98 (4th Cir. 2019)

(requiring consideration of post-conviction evidence and statutory sentencing factors in the

context of a sentence reduction sought pursuant to § 3582(c)(2)); *see also United States v.*

*McDonald*, 986 F.3d 402, 412 (4th Cir. 2021) (extending *Martin* to motions filed pursuant to

---

[9] Section 3582(c) states, in pertinent part:

The court may not modify a term of imprisonment once it has been imposed
except that—

(1) in any case—

(A) the court, upon motion of the Director of the Bureau of
Prisons, or upon motion of the defendant after the defendant has
fully exhausted all administrative rights to appeal a failure of the
Bureau of Prisons to bring a motion on defendant's behalf or the
lapse of 30 days from the receipt of such a request by the warden
of the defendant's facility, whichever is earlier, may reduce the
term of imprisonment (and may impose a term of probation or
supervised release with or without conditions that does not exceed
the unserved portion of the original term of imprisonment), after
considering the factors set forth in section 3553(a) to the extent
that they are applicable, if it finds that—

(i) extraordinary and compelling reasons warrant such a
reduction . . .
and that such a reduction is consistent with
applicable policy statements issued by the
Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A).

§ 3582(c)(1)(B)).  However, a petitioner's rehabilitation alone does not provide sufficient grounds to warrant a sentence modification.  *See* 28 U.S.C. § 994(t).[10]

**B.**  **Exhaustion of Administrative Remedies**

Although the Court generally cannot "modify a term of imprisonment once it has been imposed," the defendant may bring a motion to modify his or her sentence "after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ."  18 U.S.C. § 3582(c)(1)(A); *see also United States v. McCoy*, 981 F.3d 271, 283 (4th Cir. 2020) ("Congress, aware of the BOP's history of extensive delays, also provided a '30-day lapse' alternative, under which a defendant may proceed directly to district court if his [or her] request is not acted on within that time.").  "Accordingly, a petitioner seeking compassionate release is generally required to exhaust his or her administrative remedies prior to bringing a motion before the district court."  *Casey v. United States*, No. 4:18-CR-4 (RAJ), 2020 WL 2297184, at *1 (E.D. Va. May 6, 2020); *see also United States v. Kibble*, 992 F.3d 326, 330 (4th Cir. 2021) (same).

Importantly, "the defendant is not required to exhaust his [or her] administrative remedies with the BOP *at all* beyond making the initial request for compassionate release."  *United States*

---

[10] 28 U.S.C. § 994(t) states:

The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. *Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.*

28 U.S.C. § 994(t) (emphasis added).

*v. Ferguson*, 55 F.4th 262, 268 (4th Cir. 2022) (emphasis in original). Consequently, there is "no reason to limit [the defendant's] motion for compassionate release in the district court to only those grounds for compassionate release he [or she] identified in his [or her] request to the BOP." *Id.*

### C.   Courts Must Find Extraordinary and Compelling Reasons Justifying Compassionate Release

As amended by the First Step Act, 18 U.S.C. § 3582(c)(1)(A) authorizes courts to modify terms of imprisonment after considering the factors set forth in 18 U.S.C. § 3553(a) if "extraordinary and compelling reasons warrant such a reduction[.]" 18 U.S.C. § 3582(c)(1)(A)(i). Congress did not define "extraordinary and compelling reasons" in the statute. The United States Sentencing Commission does, however, further define "extraordinary and compelling reasons." U.S.S.G. § 1B1.13(b); *see United States v. Burrell*, No. 3:04-CR-364 (JAG), 2023 WL 7726404, at *4 n.7 (E.D. Va. Nov. 15, 2023). The Sentencing Commission

> addressed the issue in a policy statement, United States Sentencing Guideline § 1B1.13, which provided the BOP with several categories of extraordinary and compelling reasons to consider. For years following the passage of the First Step Act, the Sentencing Commission failed to update § 1B1.13 to account for motions filed by defendants, meaning the policy did not bind the courts when presented with a defendant's motion for compassionate release. A court therefore remained empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise.

*Burrell*, 2023 WL 7726404, at *4, n. 7 (cleaned up) (citing *McCoy*, 981 F.3d at 276, 281–82, 284).

The 2021 Sentencing Guidelines enumerated four bases on which to evaluate a motion for compassionate release. U.S.S.G. § 1B1.13 cmt. N.1(A)–(D) (U.S. SENT'G COMM'N 2021) identified four bases to establish extraordinary and compelling reasons for release:

> (A) medical conditions;
> (B) age;

(C) family circumstances; and,

(D) other reasons.

U.S.S.G. § 1B1.13 cmt., n.1(A)–(D).

In 2023, the United States Sentencing Commission published new sentencing guidelines amendments (the "2023 Sentencing Guidelines Amendments" or "2023 Amendments"). Pursuant to the 2023 Amendments, the Sentencing Guidelines now identify six instructive categories of extraordinary and compelling reasons that may allow for a sentence reduction.[11]

These are:

(1) certain medical circumstances of the defendant, such as terminal illness or the inability to receive specialized medical care while incarcerated, [U.S.S.G.] § 1B1.13(b)(1)[12];

(2) the defendant's age, *id.* § 1B1.13(b)(2)[13];

(3) the defendant's family circumstances, *id.* § 1B1.13(b)(3)[14];

(4) the fact that the defendant, while in custody, was the victim of sexual or physical abuse committed by, or at the direction of, a correctional officer, *id.* § 1B1.13(b)(4)[15];

(5) 'any other circumstances or combination of circumstances . . . similar in gravity to' the circumstances 'described in paragraphs (1) through (4).' *Id.* § 1B1.13(b)(5)[16], and,

---

[11] *See* Appendix A, U.S.S.G § 1B1.13(b) (2023).

[12] *See* App. A, at **U.S.S.G. § 1B1.13(b)(1)**; *cf.* Appendix B, **U.S.S.G. § 1B1.13 cmt. n.1(A).**

[13] *See* App. A, at **U.S.S.G § 1B1.13(b)(2)**; *cf.* App. B, at **U.S.S.G. § 1B1.13 cmt. n.1(B).**

[14] *See* App. A, at **U.S.S.G. § 1B1.13(b)(3)**; *cf.* App. B, at **U.S.S.G. § 1B1.13 cmt. n.1(C).**

[15] *See* App. A, at **U.S.S.G. § 1B1.13(b)(4).**

[16] *See* App. A, at **U.S.S.G. § 1B1.13(b)(5)**; *cf.* App. B., at **U.S.S.G. § 1B1.13 cmt. n.1(D).**

(6) the defendant received an 'unusually long sentence,' *id.*
§ 1B1.13(b)(6). [17]

*United States v. Tucker*, 2023 WL 8357340, at *5 (D. Md. Dec. 1, 2023).

The United States Court of Appeals for the Fourth Circuit explained—even before the 2023 Sentencing Guidelines Amendments—that "[w]hen a defendant exercises his [or her] new right to move for compassionate release on his [or her] own behalf . . . § 1B1.13 does not apply, and . . . § 3582(c)(1)(A)'s consistency requirement does not constrain the discretion of district courts." *McCoy*, 981 F.3d at 281. The Fourth Circuit further illuminated that:

> [w]hen Congress authorized district courts, as a matter of discretion, to release an inmate from prison based on extraordinary and compelling reasons, it did so to introduce compassion as a factor in assessing ongoing terms of imprisonment, authorizing a district court to give greater weight to an inmate's personal circumstances—when sufficiently extraordinary and compelling—than to society's interests in the defendant's continued incarceration and the finality of judgments.

*United States v. Hargrove*, 30 F.4th 189, 197 (4th Cir. 2022).

Since *McCoy* and *Hargrove*, the 2023 Amendments have taken effect. These Amendments clarify the Commission's view on what could constitute "extraordinary and compelling reasons" for a sentence reduction under the First Step Act.[18] The *McCoy* court has

---

[17] *See* App. A, at **U.S.S.G. § 1B1.13(b)(6).**

[18] As other courts have observed,

> [t]he Fourth Circuit has yet to address the impact the amended Sentencing Guidelines have on *McCoy* and similar rulings or precisely how courts should apply the amended policy statement in motions for compassionate release, particularly motions filed before November 1, 2023. The Court need not reach this question, however, because [Mr. Wilkerson] has failed to establish an extraordinary and compelling reason to reduce his sentence applying both the case law before November 1, 2023, and the amended Sentencing Guidelines.

*Burrell*, 2023 WL 7726404, at *4 n.7.

noted, however, that the Guidelines, while helpful, are merely advisory and do not bind the Court. "[D]istrict courts are 'empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise.'" *McCoy*, 981 F.3d at 284 (quoting *United States v. Zullo*, 976 F.3d 228, 230 (2d Cir. 2020)).

### 1.    Changes to Sentencing Guidelines

The United States Supreme Court has determined that "the First Step Act allows district courts to consider intervening changes of law or fact in exercising their discretion to reduce a sentence[.]" *Concepcion v. United States*, 597 U.S. 481, 500 (2022). District courts within the Fourth Circuit have decided that sentencing disparities resulting from intervening changes in the Fourth Circuit's interpretation of the sentencing guidelines can constitute an "extraordinary and compelling reason" for compassionate release.[19] *See, e.g., United States v. Redd*, 444 F. Supp. 3d 717, 723–724 (E.D. Va. 2020) (finding that the "gross disparity between the sentence Mr. Redd received and the sentence he would have received after the First Step Act . . . constitute[s] [an] extraordinary and compelling reason[] that warrant[s] a reduction to Mr. Redd's sentence"); *United States v. Fennell*, 570 F. Supp. 3d 357, 363 (W.D. Va. 2021) (finding that "the significant disparity between Fennell's current sentence and the [ten years reduced] sentence he would face today for the same offense provides an extraordinary and compelling basis for a sentence reduction under § 3582(c)(1)(A)"); *United States v. Arey*, 461 F. Supp. 3d 343, 350 (W.D. Va.

---

[19] The 2023 Sentencing Guideline Amendments added subsection (c) to U.S.S.G. § 1B1.13, which provides that a change in the law, or in non-retroactive Guidelines amendments, ordinarily shall not be considered when determining whether extraordinary and compelling reasons exist. However, subsection (c) includes an important caveat: "if a defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction under this policy statement, a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) may be considered for purposes of determining the extent of any such reduction." U.S.S.G. § 1B1.13(c) (2023).

2020) ("The fact that if [the defendant] were sentenced today for the same conduct he would likely receive a [forty year] lower sentence than the one he is currently serving constitutes an 'extraordinary and compelling' reason justifying potential sentence reduction under § 3582(c)(1)(A)").

A plethora of unpublished cases that follow this same reasoning. *See, e.g.*, *United States v. Banks*, 2022 WL 220638, at *2–3, *6 (W.D. Va. Jan. 25, 2022) (88-month difference between the low end of defendant's career offender sentencing range and the low end of the non-career offender sentencing range was "such [a] gross disparit[y] in sentencing" that it constituted an extraordinary and compelling circumstance); *United States v. Williams*, No. 1:14-CR-428 (TSE), 2021 WL 5827327, at *6–7 (E.D. Va. Dec. 8, 2021) (difference of "more than three years longer than the high end of the guidelines that would have applied under *Norman*"[20] warranted a reduction in defendant's sentence from 168 months to 125 months); *United States v. Huggins*, 2021 WL 3025459, at *4 (W.D. Va. July 16, 2021) (sentencing disparity of more than five years was a "gross disparity" and an "extraordinary and compelling" reason warranting a sentence reduction); *but see United States v. Hinton*, No. 2:15-CR-80 (MSD), 2022 WL 988372, at *5 (E.D. Va. Mar. 31, 2022) (three to six year sentencing disparity "not so drastic that it constitutes an extraordinary and compelling reason for relief"). The Fourth Circuit has specifically held that "courts legitimately may consider, under the 'extraordinary and compelling reasons' inquiry, that defendants are serving sentences that Congress itself views as dramatically longer than necessary or fair." *McCoy*, 981 F.3d at 275, 285–86 (quoting *Redd*, 444 F. Supp. 3d at 723).

---

[20] *United States v. Norman*, 935 F.3d. 232 (4th Cir. 2019) (finding that defendant was subject to a lower guideline range because a drug conspiracy conviction did not constitute a "controlled substance offense" because the statute of conviction "criminalize[d] a broader range of conduct than that covered by generic conspiracy").

2. **Medical Circumstances of the Defendant**

The 2023 Sentencing Guidelines Amendments explain in greater detail what a court should consider when considering medical circumstances as a basis for an extraordinary and compelling reason to grant compassionate release.

The relevant section of U.S.S.G. § 1B1.13(b) reads:

(1) MEDICAL CIRCUMSTANCES OF THE DEFENDANT.—
\*    \*    \*

(B) The defendant is—

(i) suffering from a serious physical or medical condition,

(ii) suffering from a serious functional or cognitive impairment, or

(iii) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(C) The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.

U.S.S.G. § 1B1.13(b)(1)(B–C).

Severe health conditions may amount to extraordinary and compelling reasons for release even when they do not precisely align with the § 1B1.13 factors. *See McCoy*, 981 F.3d at 284; *United States v. Malone*, 57 F.4th 167, 175 (4th Cir. 2023) (holding that the defendant's "countless physical health ailments," including cancer, a permanent colostomy bag, Type II diabetes, morbid obesity, hypertension, hyperlipidemia, and cystic kidney and liver disease were extraordinary reasons for his release, "even if the district court was bound by the § 1B1.13 factors (*which it was not*) . . .") (emphasis added).

18

### 3.    Rehabilitation of the Defendant

In addition to medical circumstances of the defendant, the 2023 Sentencing Guidelines

Amendments elaborate on the extent to which a court should consider a defendant's

rehabilitation as an extraordinary and compelling reason for release:

> REHABILITATION OF THE DEFENDANT. – Pursuant to 28 U.S.C. §994(t),
> rehabilitation of the defendant is not, by itself, an extraordinary and compelling
> reason for purposes of this policy statement. However, rehabilitation of the
> defendant while serving the sentence may be considered in combination with
> other circumstances in determining whether and to what extent a reduction in the
> defendant's term of imprisonment is warranted.

U.S.S.G. § 1B1.13(d).

The Fourth Circuit has echoed this requirement, explaining that the Court may consider a

defendant's rehabilitation (1) in its analysis of the § 3553(a) sentencing factors and (2) as *one of*

*several* factors in determining whether a defendant's reasons for release are extraordinary and

compelling.  *United States v. Davis*, 99 F.4th 647, 659 (4th Cir. 2024) (citing *McCoy*, 981 F.3d at

286 n.9).  However, rehabilitation alone is not an extraordinary and compelling reason for

release.  *Id.*

### D.    Courts Must Weigh the Statutory Sentencing Factors Before Granting Compassionate Release

Even after finding a sufficient "extraordinary and compelling reason" for compassionate

release, the Court must then consider the Section 3553(a) factors and any relevant post-

conviction conduct before modifying a defendant's sentence.  18 U.S.C. § 3582(c)(1)(A);

*Martin*, 916 F.3d at 397–98; *McDonald*, 986 F.3d at 412.  The Court must weigh factors

including "the nature and circumstances of the offense and the history and characteristics of the

defendant."  18 U.S.C. § 3553(a)(1).  The Court also must consider "the need for the sentence

imposed . . . to promote respect for the law . . . ; to afford adequate deterrence to criminal

conduct; . . . [and] to protect from the public from further crimes of the defendant." 18 U.S.C.
§ 3553(a)(2). The statutory sentencing factors direct the Court to consider the kinds of sentences
available and the sentencing range established for the offense. 18 U.S.C. § 3553(a)(4).

## III. Analysis

After due consideration, the Court will deny the Motion for Compassionate Release.
(ECF No. 116.) Although this Court agrees with Mr. Wilkerson's assertion that he has exhausted
his administrative remedies, (ECF Nos. 116, at 4–5; 124, at 1–3), the Court will deny the Motion
for Compassionate Release upon finding that Mr. Wilkerson does not offer any "extraordinary
and compelling reasons" to support his request, 18 U.S.C. § 3582(c)(1)(A)(i). Additionally, even
were Mr. Wilkerson to offer an "extraordinary and compelling reason" to justify his request,
which he does not, the Court would find that the applicable statutory sentencing factors under
section 3553(a) do not support a reduction of his sentence.

### A.    Changes to Sentencing Guidelines Do Not Amount to an Extraordinary and Compelling Reason for Mr. Wilkerson's Release

If Mr. Wilkerson were sentenced according to the 2023 Guidelines, it is possible that
such a sentence would be less than that which Mr. Wilkerson is now serving. But the disparity
between Mr. Wilkerson's current sentence and the minimum sentence prescribed by the 2023
Guidelines is not so substantial and unjust as to warrant Mr. Wilkerson's release.

At the time of his sentencing, Mr. Wilkerson received "two criminal history status points
for committing the instant offense while being under a criminal justice sentence, pursuant to
USSG § 4A1.1(d)." (ECF No. 121, at 2 n.2.). Under the 2023 Sentencing Guideline
Amendments, Mr. Wilkerson would be assessed only one status point, (ECF No. 121, at 2 n.2),
reducing Mr. Wilkerson's criminal history points to 12 and resulting in a criminal history
category V. (*See* ECF No. 121, at 1 n.1.) With a Total Offense Level of 31 and a criminal

history category V, the sentencing guideline range for Count One is 168–210 months' incarceration.[21]  Mr. Wilkerson is currently serving a reduced sentence of 188 months' imprisonment on Count One.  (ECF No.100).  This sentence remains well within -- indeed just below the middle of -- the updated guideline range, and the maximum possible within–guideline reduction to Mr. Wilkerson's sentence would be 20 months.[22]

Mr. Wilkerson fails to articulate how his reduced 188-month sentence on Count One amounts to a disparity that is "disproportionate to both 'the seriousness of the offense and to what Congress now deems appropriate for this kind of conduct.'"  *McCoy*, 981 F.3d at 279 (quoting *United States v. Bryant*, No. 95-202-CCB-3, 2020 WL 2085471, at *5 (D. Md. Apr. 30, 2020)).  It is up to the court to perform "individualized assessments of each defendant's sentence" to determine whether extraordinary and compelling circumstances exist. *McCoy*, 981 F.3d at 286.

> [I]n *McCoy*, the Fourth Circuit highlighted the following factors when it affirmed the compassionate release of four defendants: (1) the defendants' "relative youth" . . . when the offenses were committed, (2) their lack of criminal history, (3) the time they had already served . . ., (4) the fact that § 924(c)'s mandatory minimums were the "lion's share" of their sentence lengths, and (5) their post-sentencing rehabilitation.

---

[21] Although Mr. Wilkerson's Reply changed his argument that the 2023 U.S.S.G. Amendments would reduce his sentencing guideline range, (*see* ECF No. 124, at 1), as noted, the Court reaches this conclusion independently, (*see* Note 3).

[22] Mr. Wilkerson received a downward departure in his original sentence. (ECF No. 75, at 1.)  To the extent Mr. Wilkerson contends that he deserves a reduction based on the overstatement of his criminal history, he received that credit earlier.  And this Court evaluates his motion applying a Criminal History of V.  No extraordinary and compelling circumstances support any further reduction.

21

*Guess*, 576 F. Supp. 3d at 374 (citing *McCoy*, 981 F.3d at 277–79, 286). This list is not exhaustive, but merely representative of some factors that may result in a finding of extraordinary and compelling reasons to justify compassionate release.[23]

Given the circumstances of Mr. Wilkerson's offense, his 188-month sentence is appropriate. Mr. Wilkerson admits to distributing over ten but fewer than thirty kilograms of heroin between 2007 until June 2009. (*See* ECF No. 44 ¶¶ 7, 1.) A search of the car Mr. Wilkerson was operating at the time he was stopped and of his residence yielded five firearms. (*See* ECF No. 44 ¶¶ 5–6.) During the relevant timeframe, Mr. Wilkerson exchanged or held more than $100,00 in cash. (ECF No. 44 ¶¶ 3–5.) Mr. Wilkerson, through his crimes, posed a grave threat to himself, his fiancée, and innumerable others in his community.

Furthermore, Mr. Wilkerson was over thirty years old when he committed these offenses. (*See* ECF No. 88, at 3.) Mr. Wilkerson had fifteen prior convictions as an adult (which the Court has appropriately weighted), including for possession with intent to distribution cocaine, reckless driving, and nine convictions for driving without a license or with a suspended license. (*See* ECF No. 88 ¶¶ 91–105.) Therefore, Mr. Wilkerson's reliance on relative youth or a lack of prior criminal history to support his request for relief fails to persuade.

When looking at the totality of the circumstances of Mr. Wilkerson's offenses, the 20-month difference between his current sentence and the minimum allowed by his new Guidelines range is "not so drastic that it constitutes an extraordinary and compelling reason for relief." *Hinton*, 2022 WL 988372 at *5.

---

[23] Factor (4) is irrelevant here because § 924(c)'s "stacking" provision did not impact Mr. Wilkerson's sentence.

**B.    Mr. Wilkerson's Health Claims Do Not Establish an Extraordinary and Compelling Reason for His Release**

Mr. Wilkerson's Motion for Compassionate Release contends that the Court should grant his immediate release because of his alleged degenerative spinal condition and an alleged lack of medical care. (ECF No. 116, at 6–8.)  However, the record substantiates neither Mr. Wilkerson's purported spinal stenosis diagnosis nor the failure or inability of the BOP to adequately care for Mr. Wilkerson.

Mr. Wilkerson has provided the Court with his BOP medical records. (ECF No. 116-2 (sealed).)  Although his medical history lists diagnoses of "[s]prain and strain of other sites of shoulder, arm," "left shoulder possible RC tear," "[i]mpingement syndrome of right shoulder," "[p]ain, unspecified" in the right shoulder, and "[u]nspecified injury of the neck," there is no record of any medical provider's having diagnosed Mr. Wilkerson with spinal stenosis. (ECF No. 116-2, at 10 (sealed).)  In fact, the phrase "spinal stenosis" does not appear anywhere in the medical records that Mr. Wilkerson provided to the Court, and it is unclear how Mr. Wilkerson arrived at the particular diagnosis he now claims. (*See* ECF No. 116-2.)

As medical evidence of his condition and of a prior cancelled surgery, Mr. Wilkerson cites only an August 16, 2021 Clinical Encounter note. (ECF No. 116-2, at 4 (sealed).)  This document states that Mr. Wilkerson (1) self-reported an "on going [sic] issue coming from [his] neck[,] causing nerve problems and muscle weakness on [his] left side for about 5 or 6 years now," (2) denied any new injuries, and (3) claimed that he was "supposed to have surgery, [but it was] cancelled years ago." (ECF No. 116-2, at 4 (sealed).)  Importantly, however, the note lacks any evidence to corroborate these claims. (*See* ECF No. 116-2, at 4 (sealed).)  Although Mr. Wilkerson contends that the Clinical Encounter note "essentially" documents his spinal stenosis,

23

(ECF No. 124, at 3), Mr. Wilkerson's own words cannot transmute into medical evidence of any such diagnosis simply because a nurse recorded his statement.

In his Reply, Mr. Wilkerson admits that the "records are not extensive," but reasserts both the veracity of his health claims and that he was denied surgery. (ECF No. 124, at 3.) The Reply includes two emails from his Aunt, Ms. Smith-Lundy stating that Mr. Wilkerson informed her of "a medical issue regarding his shoulder/neck area," described discomfort and numbness in one of his arms, and reported that he had been told "that a surgery was going to be scheduled" but that this surgery never occurred. (ECF No. 124-1, at 2.) Ms. Smith-Lundy does not identify when Mr. Wilkerson supposedly conveyed this information to her. (*See* ECF No. 124-1, at 2.) Like the Clinical Encounter note, Ms. Smith-Lundy's emails are sparse in detail and contain no verifiable information. (*See* ECF No. 124-1, at 2.)

This Court concludes that Mr. Wilkerson has not sufficiently demonstrated a diagnosis of spinal stenosis, but even if he had done so, the record does not indicate that the BOP is unable or unwilling to adequately care for him. Mr. Wilkerson alleges that "the lack of attention the BOP has paid to [his health] condition is extraordinary and compelling on its own." (ECF No. 116, at 7.) Yet the "PLAN" section of the Clinical Encounter note indicates that Mr. Wilkerson's "disposition" was "To be Evaluated by Provider," (ECF No. 116-2, at 4 (sealed)), and it was Mr. Wilkerson who failed to appear at his subsequent appointment scheduled for the following month. (ECF No. 116-2, at 3 (sealed).) After his missed appointment, nothing in the record indicates that Mr. Wilkerson pursued any further medical attention for his purported health concern. (*See* ECF No. 116-2 (sealed).) Mr. Wilkerson's only documented healthcare encounter

after that time was a routine chest x-ray performed in February 2022,[24] which found that his "[t]horacic musculoskeletal structures are age appropriate." (ECF No. 116-2, at 29 (sealed).)

Mr. Wilkerson does not provide any verifiable evidence of his diagnosis or a lack of care. (*See* ECF No. 116-2.) Within the documents Mr. Wilkerson references, the only information relevant to the alleged conditions originates from Mr. Wilkerson himself. (*See* ECF Nos. 116-2, at 4; 124-1, at 2.) Therefore, Mr. Wilkerson's health claims do not establish an extraordinary and compelling reason for his compassionate release.

### C.    Mr. Wilkerson's Rehabilitation Is Not an Extraordinary and Compelling Reason for His Release

Mr. Wilkerson contends that his Motion should be granted because he has "demonstrated rehabilitation and growth." (ECF No. 116, at 8.) Mr. Wilkerson advises that he received just one disciplinary sanction in 2020, after he was caught possessing a cellular telephone, but he maintains that "he has taken advantage of every resource available to him with the BOP and has proven himself to be a mature adult capable of change." (ECF No. 116, at 8–9.) To support this assertion, Mr. Wilkerson points to (1) his relocation to a low-security BOP facility, (2) his completing a drug treatment program and numerous educational courses, and (3) his forming, in coordination with an external support network, a commendably comprehensive plan for reentering the community upon his release. (ECF No. 116, at 8–10.)

Mr. Wilkerson's Aunt, Ms. Smith-Lundy, affirms that he will reside at her home when he is released, avers that she owns the non-profit organization where Mr. Wilkerson intends to work

---

[24] Mr. Wilkerson's February 2022 chest x-ray was unrelated to his reported arm pain or numbness and was performed due to his history of positive PPD test results. (ECF No. 116-2, at 29 (sealed).) A purified-protein derivative ("PPD") skin test detects active or latent tuberculosis infection. Parul Pahal et al., *PPD Skin Test*, StatPearls (Apr. 23, 2023), https://www.ncbi.nlm.nih.gov/books/NBK556037/.

upon release, and further details how she would help to support Mr. Wilkerson throughout his reentry into society. (ECF No. 124-1, at 1.) Ms. Smith-Lundy reports that she will help Mr. Wilkerson obtain a CDL license based on her extended experience helping individuals with arrests on their record to successfully integrate into society. (ECF No. 124-1, at 1.)

Mr. Wilkerson's commitment to personal growth, while laudable, is not an extraordinary and compelling reason to reduce his sentence. In *United States v. Martin*, the Fourth Circuit vacated and remanded the district court's denial of both defendants' motions for sentence reduction because the district court failed to address any new mitigating evidence. 916 F.3d 389, 397–98 (4th Cir. 2019). The Fourth Circuit has explained that if an individual is eligible for a sentence reduction, the district court must give weight to the person's "past transgressions" as well as "the multitude of redemptive measures that [the person] has taken." *Id.* at 397. However, Congress has made clear that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t). With these dictates in mind, the Court acknowledges Mr. Wilkerson's participation in rehabilitation and educational programs during his time in prison and his efforts to create a robust release plan, but these measures do not warrant his early release.

Mr. Wilkerson also notes that if he were released today, "he would remain under supervision until 2028, when he would be in his 50s." (ECF No. 116, at 9.) To argue this fact's relevance, Mr. Wilkerson references studies suggesting that "the older the age of the offender upon release, the less likely they are to be incarcerated again," and "older people commit acts of violence at far lower rates than younger people, and . . . young offenders are not necessarily likely to commit crimes as they age into their thirties and forties." (ECF No. 116, at 9.)

The Court is not persuaded by My. Wilkerson's argument that his age makes him less likely to reoffend. (*See* ECF No. 116, at 9.)  Mr. Wilkerson committed these offenses between the ages of thirty-one and thirty-three years old.  At this age, the likelihood of recidivism already should have waned.  Therefore, the Court does not find Mr. Wilkerson's age relevant to his request for release.

As discussed above, neither changes to sentencing guidelines nor Mr. Wilkerson's health claims establish an extraordinary and compelling reason for his release. And because Mr. Wilkerson's rehabilitation alone similarly cannot amount to an extraordinary and compelling reason for release, the Court finds that there are no such reasons here.

**D.    The 3553(a) Factors Do Not Support a Reduction in Mr. Wilkerson's Sentence**

Although the Court has found that no extraordinary and compelling reasons exist to warrant Mr. Wilkerson's release, the Court will nonetheless consider his request under the applicable statutory sentencing factors articulated in 18 U.S.C. § 3553(a) to create a full record.

Mr. Wilkerson has an extensive criminal history, including possession of cocaine with intent to distribute, reckless driving, failure to appear, possession of marijuana with intent to distribute, and repeated convictions for driving without a license or with a suspended license. (ECF No. 88 ¶¶ 91–105.)  The Court took into account the nature of the driving and marijuana convictions whenever it reviewed his previous motions.  The Court acknowledges that much of Mr. Wilkerson's criminal history consists of traffic infractions, which the Court considered when it reduced his sentence in 2015.  (*See* ECF No. 100).  Nevertheless, Mr. Wilkerson's previous consistent disregard for the law demonstrates a high risk of recidivism and presents a threat to the public.  Further substantiating this point, Mr. Wilkerson committed the underlying offenses here while under criminal justice sentences for Possession of Cocaine with Intent to Distribute;

27

Reckless Driving, Driving on Suspended License (7th offense); and Operating a Motor Vehicle While Operator's License is Revoked/Suspended (7th offense).  (ECF No. 88, at 40–41.)

The Court also finds that Mr. Wilkerson's rehabilitation efforts are not so substantial as to outweigh the severity of his crimes.  Although Mr. Wilkerson is presently incarcerated for what he calls non-violent crimes, there is no doubt that his crimes were both serious and exceptionally dangerous to the community.  Between 2007 and June 2009, Mr. Wilkerson admits to distributing more than ten but less than thirty kilograms of heroin.  (ECF No. 44 ¶¶ 7, 1.)  During this same timeframe, heroin killed 8,718 Americans.  *NCHS Data Brief, Number 491, March 2024*, NATIONAL CENTER FOR HEALTH STATISTICS, 5 fig.4 (Mar. 2024), https://www.cdc.gov/nchs/data/databriefs/db491-tables.pdf#4.

Furthermore, between the car in which Mr. Wilkerson transported heroin and Mr. Wilkerson's residence, where he stored, processed, and packaged narcotics and money, authorities discovered five firearms.  (*See* ECF No. 44 ¶¶ 2, 5–6.)  The nearly half-dozen firearms attributable to Mr. Wilkerson included a loaded pistol on the driver's side floorboard of the vehicle he had been driving, a semi-automatic assault rifle, and a handgun with an obliterated serial number.  (*See* ECF No. 44 ¶¶ 5–6.)  The dangers of combining firearms and narcotics cannot be overstated.  Even if Mr. Wilkerson did not intend to shoot anyone, he orchestrated a situation that significantly increased the probability of both his being robbed and his killing someone in response to such an attempt, whether a potential thief, an innocent bystander, or both.  Particularly given the large quantities of heroin that Mr. Wilkerson was handling, the high number of firearms to which Mr. Wilkerson had access, and the uniquely dangerous nature of several of those firearms, Mr. Wilkerson's actions gravely imperiled the members of his community.

In considering a motion for compassionate release, the Court may weigh a defendant's rehabilitation in combination with other factors, but rehabilitation alone is not an extraordinary and compelling reason for the defendant's release. (*United States v. Davis*, 99 F.4th 647, 659 (4th Cir. 2024) (citing *McCoy*, 981 F.3d at 286 n.9). Despite his disciplinary infraction while imprisoned, the Court commends Mr. Wilkerson for his completing over 22 educational courses and developing a comprehensive release plan. (ECF No. 121, at 2; *see* ECF Nos. 116, at 9; 124, at 5; 124-1, at 1.) However, the Court ultimately finds that these measures do not warrant Mr. Wilkerson's immediate release in light of the nature and circumstances of his underlying conviction, the history he brings to this Court, the totality of his record, and the need to protect the public.

In total, the 18 U.S.C. § 3553(a) factors do not support Mr. Wilkerson's compassionate release even if this Court were to find an "extraordinary and compelling reason[]" justifying it. *See* 18 U.S.C. § 3582(c)(1)(A).

### IV.  Conclusion

For the reasons explained above, the Court will deny the Motion for Compassionate Release. (ECF No. 116.)

An appropriate Order shall issue.

Date: 10/30/2024
Richmond, Virginia

/s/
M.  Hannah Lauck
United States District Judge